**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Jack Witt Voris,<br><br>    Defendant. | No. CR-16-02267-001-TUC-JGZ (DTF)<br><br>**ORDER** |

When federal agents attempted to execute a warrant for Defendant Jack Witt Voris, gun fire was exchanged. Defendant was subsequently charged with nine counts of aggravated assault on a federal agent, in violation of 18 U.S.C. § 111(a) and (b); nine counts of using a firearm in a crime of violence, in violation of 18 U.S.C. § 924(a)(1)(A)(iii); and one count of being a prohibited possessor of a firearm, 18 U.S.C. §§ 922(g)(1) & 924(a)(2). On February 15, 2018, a jury convicted Defendant of six of the aggravated assault charges; six counts of using a firearm in a crime of violence; and one count of being a prohibited possessor of a firearm. The jury acquitted Defendant of three of the counts of aggravated assault and three of the counts of using a firearm in a crime of violence. Defendant now moves for a new trial, alleging the Court erred by: (1) declining to give a jury instruction on a lesser-included offense of simple assault on an officer, and (2) denying Defendant's request for a mistrial after a government witness referenced Defendant's dangerous criminal past. (Doc. 109.) The Court will deny the motion.

### A. Defendant's Request for Lesser-Included Offense Jury Instruction

"A defendant is entitled to an instruction on a lesser-included offense if the law and evidence satisfy a two-part test: 1) the elements of the lesser offense are a subset of the elements of the charged offense, and 2) the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit [him] of the greater offense." *United States v. Arnt*, 474 F.3d 1159, 1163 (9th Cir. 2007) (citations omitted). The first part of the test is satisfied because "simple assault is a lesser-included offense of felony assault on a federal officer under 18 U.S.C. § 111." *United States v. Rivera-Alonzo*, 584 F.3d 829, 833 (9th Cir. 2009) (the lesser offense of aggravated assault is simple assault, the misdemeanor violation of § 111(a)); *United States v. Chapman,* 524 F.3d 1215, 1218-19 (9th Cir. 2008) (Section 111(a) "distinguishes between misdemeanor and felony conduct by use of the term 'simple assault.'").

The second part of the test is not satisfied in this case because a jury could not rationally find the Defendant guilty of simple assault and acquit him of aggravated assault. The statute does not define the term "simple assault;" therefore the term is given its common law meaning. *See United States v. Turley,* 352 U.S. 407, 411 (1957). Under the common law, simple assault is committed by either: (1) willfully attempting to inflict injury upon the person of another, or (2) by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm. *Rivera-Alonzo*, 584 F.3d at 833. Simple assault becomes felony assault when there is proof of the additional element of "use of a deadly or dangerous weapon." *See* 18 U.S.C. § 111; *Rivera-Alonzo*, 584 F.3d at 833.

The evidence would not permit the jury to find the Defendant guilty of simple assault without the use of the gun, the additional element required for the felony. Trial evidence established that officers went to arrest Defendant on a warrant after receiving information that Defendant was staying in a second-story room at the Quality Inn hotel. When Defendant became aware of the officers in the hallway outside of his hotel room door, he ran to the back of the hotel room intending to jump out of the window, a plan

which he abandoned upon observing officers in the parking lot below. Instead of jumping, he fired his gun from the window. The officer fired back. With that avenue of escape blocked, he returned to the door at the front of the hotel room. He pushed his girlfriend out the door towards the officers waiting there, and locked the door behind her. Almost immediately he fired his weapon from inside the room. He knew the officers were outside of the door and he knew they were there to arrest him. None of these facts were disputed at trial. Defendant argues, however, that when he fired his gun from the inside of the hotel room, he aimed it at the floor of the room and did not aim it at the officers. He relies on statements that he made to law enforcement officers after his arrest to support this argument.

Evidence of Defendant's statements was presented through several witnesses. Deputy Meeboer testified that when he transported the Defendant from the hotel to the police station, Defendant stated that he shot at the marshals and asked what kind of charges he would be looking at.

Defendant's recorded post-arrest interview was played for the jury. In the interview Defendant talked about discharging his weapon at officers outside of the window and the officers outside of the door. He said that he heard the officers were "getting up on" the door, and "just had to let them know that's not a good idea." Defendant explained that he communicated that sentiment by firing some rounds "at the floor," "well, uh, not at the floor, but on the low." (Ex. 112, pg. 11.) Later he was asked whether he fired at the door too or just the ground. Defendant responded, "No. I don't believe I fired at the door. . . . I don't know." (*Id*., p. 35.) Defendant thought that the discharged bullets would be found in the lower part of the wall; he stated "[b]ecause I could have shot . . . across the wall . . . you know. Somewhere around mid-level so I'd be sure to hit something." (*Id*.) Defendant related that he heard one officer curse and Defendant thought he probably got him in his vest or something. (*Id*., p. 36.) Defendant stated: "that's what I was thinking. I was like, because I did shot [sic] through the wall, but just low, and I was like, eh, I hope nothing ricocheted and came back up, you know.

Because that was a possibility. That sh** goes anywhere when it . . .get barely touched . . ." (*Id*., p. 36.)

Defendant initially denied firing at the officers outside of the window. When asked whether he shot at them, Defendant responded that he did not believe so, but immediately added, "But I might have. I don't know." (*Id*., p. 12.) He later explained that he was firing outside through the window to push the dude back. (*Id*., p. 32-33.) He saw the officer with a gun in his hand; the officer told him not to move, that he was under arrest; and the Defendant "just let a, a couple rounds, uh, in his direction, not to him or nothing." (*Id.* p. 33.) The officer returned fire. Because neither the officer nor Defendant were hit, Defendant concluded that "obviously he didn't want to hit me either." (*Id*.)

The Defendant told the interviewing detectives that he intended to die that day. He stated that "at the end of the day I didn't give a f*** about those f***ing Marshals or anything because they sure as hell haven't give a f*** about me or they gave too much sh** of a f*** about me lately." (*Id*., p. 13.) When asked why he shot at the officers, he explained that he told himself he was not going back to prison. (*Id*, p. 30.) His mindset was to make the officers kill him. (*Id*.) The Defendant told the detectives that "initially, it was fire, fire or fire at that dude, boom, boom. And then fire boom, boom." (*Id*., p. 31.) Defendant explained: "I'm just a dude that was trying to f***ing get his freedom back." (*Id*.)

Relying on his post-arrest statements that he fired the gun at the floor, Defendant argues that the Court was required to give a lesser-included simple assault instruction. According to the Defendant, because there was evidence that he did not intend to shoot the officers with the gun, there was evidence from which the jury could have found a simple assault. The Court disagrees. A lesser-included instruction was not warranted because the Defendant could not be found guilty of simple assault, under either theory, but for the use of the gun. As noted above, simple assault is committed by **either**: (1) willfully attempting to inflict injury upon the person of another, or (2) by a threat to

inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm. Even if Defendant did not willfully attempt to inflict injury on the officers, the first means of committing simple assault, he committed an assault by firing his gun from inside the hotel room as a threat to inflict injury upon the officers, with an apparent ability to do so, causing the officers to reasonably fear bodily injury. Because Defendant's only assaultive action involved his use of a firearm, a lesser-included instruction was not warranted. If Defendant had not used a gun, there could be no assault, simple or felony. *See*, *e.g.*, *Rivera-Alonzo*, 584 F.3d at 833-34 (finding no abuse of discretion in refusing to give lesser included assault instruction where the defendant argued that the physical forced he used was justified in self-defense; because there was incontrovertible evidence of physical contact, the jury could not have discounted that contact unless the jury believed Rivera acted only in self-defense. Yet, if the jury found self-defense, Rivera would have been acquitted of all charges, and the jury could not have convicted him of simple assault); *see also United States v. Gividen*, 468 Fed. App'x 744, 746 (9th Cir. 2012) (concluding district court did not abuse its discretion in refusing lesser-included assault instruction where a rational jury could not have convicted Gividen of simple assault on a federal officer without finding that she used her pickup truck as a deadly or dangerous weapon.)

Defendant relies on *United States v. Skeet,* 665 F.2d 983 (9th Cir. 1982). *Skeet* is factually distinguishable. There the defendant argued that his gun discharged accidentally when he tripped. *Id.* at 986-87. The appeals court concluded that a lesser included instruction on simple assault was required because, if the gun discharged accidentally, there could be no willful attempt to inflict injury upon his brother. The appeals court did not consider whether the unintentional discharge could have been a threat to inflict injury, the second means of committing an assault, because the defendant's brother said he had no fear, which was a necessary element. *Id.* at 987.

//

### B. Defendant's Motion for Mistrial

Under Rule 33, Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The denial of a motion for a mistrial rests within the sound discretion of the trial court and can be held to be error only if it amounts to a clear abuse of that discretion." *United States v. Carlson*, 423 F.2d 431, 439 (9th Cir. 1970); *see also* Fed. R. Crim. P. 26.3. It is appropriate for the trial court to declare a mistrial if an impartial verdict cannot be reached or if a procedural error certain to result in appeal upon conviction occurs. *See Illinois v. Somerville,* 410 U.S. 458, 464 (1973). Trial judges should consider alternatives to declaring a mistrial, choosing the path least harmful to a defendant's rights. *See Chapman*, 524 F.3d at 1082. A district court may properly refuse to declare a mistrial if, apart from a witness's improper testimony, evidence of a defendant's guilt is overwhelming. *Neal v. United States*, 342 F.2d 730, 737 (9th Cir. 1965).

Defendant seeks a new trial based on U.S. Deputy Marshal David Smith's reference to Defendant's criminal history during his testimony. Deputy Smith testified that he directed the task force conducting Defendant's arrest to "treat this as a barricaded situation because we had already in possession information related to Mr. Voris's criminal history. The testimony was not directly responsive to a question; Deputy Smith was being asked about how the stack of officers moved after Defendant slammed the door. After Deputy Smith's reference to Defendant's criminal history, the government redirected Deputy Smith, stating: "Let me slow you down here. . . . Let me ask you, how far did the stack move? We don't need to initially get into the why." Defendant did not object to Deputy Smith's statement until five or six minutes later, after trial concluded for the day and the jury was excused. Defendant moved for mistrial based on Deputy Smith's reference to Defendant's criminal history. Counsel acknowledged that the description was cut off by the AUSA, but asserted that jurors would be left wondering what was the criminal history that would immediately cause the officers to make it into a barricade situation. The Court denied the motion.

The interests of justice did not require declaration of a mistrial based on Deputy Smith's single reference to Defendant's criminal history in relation to the barricade. The reference was brief and ambiguous, and the jurors were aware from the Defendant's own testimony and the parties' stipulation that Defendant had a prior felony conviction, he was wanted on a warrant, and he did not want to go back to prison. The AUSA minimized the reference and the Court confirmed that defense counsel did not object to or ask for a curative instruction so as not to draw attention to the testimony. The Court also considered alternatives to mistrial. At the close of trial, the parties stipulated to the fact that Defendant had a prior conviction of an offense punishable by more than one year. (*See* Doc. 103, Ex. 118.) This stipulation was material to one of the charges of conviction, violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession of a firearm by a prohibited person. In addition, the jurors were shown Defendant's videotaped interview wherein he stated that he barricaded himself in his room and fired his gun because he did not want to go back to prison. Under these circumstances, any inference that could be drawn from Deputy Smith's reference was not so prejudicial as to prevent the jury from rendering an impartial verdict or to make reversal certain on appeal. *See e.g. United States v. Jaime-Duarte*, 270 F. App'x 580, 581 (9th Cir. 2008) (declaration of mistrial unnecessary when "single reference to [defendant's] criminal background did not tell the jury the specifics of any prior offense, the government did not mention or make use of the comment at any other point in the trial, and a proper curative instruction was given prior to jury deliberations").

//
//
//
//
//
//
//

For the foregoing reasons, IT IS ORDERED THAT Defendant's Motion for a New Trial is DENIED. (Doc. 109.)

Dated this 9th day of August, 2018.

_____
Honorable Jennifer G. Zipps
United States District Judge